Jones, Judge:
At about 7:30 to 8:00 o’clock on the morning of March 31, 1967, four convicts assigned for work at Hopemont Sanitarium overpowered a guard and escaped. At about 10:00 o’clock that morning, they entered the home of the claimants, Mr. and Mrs. James P. Lewis, near Terra Alta, made Mr. Lewis and later Mrs. Lewis and one of their sons-in-law their prisoners and *193 helped themselves to the Lewises’ clothing which they put on in place of their institutional uniforms. That night, two daughters, another son-in-law, William L. Wilson, and a small child went to the home and were also taken captive. Later that night, having stolen several items of property in addition to the clothing, the convicts tied up all of the family, except Wilson, whom they made their hostage and compelled to drive them away in his car. They went to Clarksburg, where they drove around for some time, and finally stole another car, leaving Wilson’s car near Clarksburg, and forced him to accompany them in the stolen car. They drove to St. Marys and across into Ohio and back to Williamstown, where they tied Wilson up and left him along Route No. 21.
The question of negligence on the part of the respondent turns on the conduct of the guard at the time of the escape. Hopemont has a maximum security section where maximum security inmates with tuberculosis are housed and where Moundsville Penitentiary prisoners are employed as orderlies. Charles Robert Sarver, Director of Corrections at the time, testified that the only difference between the security at Hope-mont and Moundsville is that there is no wall around Hope-mont. Two guards are on duty at all times, one inside the maximum security section and one outside. On the day in question, the outside guard unlocked the steel door between the prison section and the office at the request of one of the convicts who wanted to get a haircut from a “trusty” whose shop was in the office. No other guard was present. As the convict came through the door, he struck the guard and as they scuffled, the guard’s gun fell out of its holster onto the floor. With his gun out of reach, the guard was no physical match for the prisoner. The prisoner took the guard’s gun and keys and released the other three prisoners. Then they opened the gun closet and took two more guns, stole the guard’s automobile and drove away. Three of the four escapees were termed “dangerous”. Early in February, 1967, one of the escapees had been sent back to Moundsville Penitentiary for attempting to escape from Hopemont, bút about a month later, he was returned to the sanitarium.
There is a difference of opinion concerning “standard procedures” at the institution. Director Sarver testified as follows: *194 “Under the security rules or regulations in effect at the time, that door should not have been opened with one guard there alone. One guard from inside and one guard from outside should have been at the door when the door was opened. The investigation did reveal that that was not done in this situation, that one guard alone opened the door thus allowing or enabling the men to overpower him.” The guard testified that “there has never been two guards at that door at no time the six years I’ve been up there and there’s never been no rules or regulations set down to that effect.” The guard also testified that the rule requiring two guards went into effect the day after the escape.
These being maximum security prisoners, known to be dangerous and under guard in a place where maximum security conditions were supposed to be in effect, the Court is of opinion that the security measures taken were not sufficient in the circumstances. The Director of Corrections termed the action “negligent”, and the “two guards” rule became standard procedure the following day. The claimants and other members of their family were badly mistreated, and they sustained damages as a result of the negligence of employees of the respondent.
While the claimants’ petition recited damages in the total amount of Five Hundred Dollars ($500.00), the damages were not itemized and the Court has had some difficulty in making its own itemization from the testimony of the witnesses. There is sufficient evidence to support the following: four shirts— $15.92; one sweatshirt- — 4.49; one suit — 70.00; one suit — 35.00; one transistor radio — 40.00; one lady’s car coat — 19.00; two pair of pants — 20.00; and one flashlight — 2.99; a total of One Hundred Seventy-seven Dollars and Thirty-five Cents ($177.35).
The son-in-law, William L. Wilson, was not a petitioner, but he was made a party to the proceeding by the Court to permit him to prove his separate damages as follows: sweater — $9.00; wrist watch — 10.00; and gasoline and other car expenses — 12:00; a total of Thirty-one Dollars ($31.00). Several other items of damage were mentioned in the testimony but they were so vague and speculative in nature that the same cannot be allowed.
*195 It is the Court’s judgment that these are claims against the State of West Virginia which in equity and good conscience should be paid, and, therefore, the Court awards the claimants, Mr. and Mrs. James P. Lewis, the sum of One Hundred Seventy-seven Dollars and Thirty-five Cents ($177.35), and the claimant, William L. Wilson, the sum of Thirty-one Dollars ($31.00).